# In the United States Court of Federal Claims

No. 19-129C

(E-Filed:  December 11, 2020)

|  |  |
|---|---|
| JOSEPH ABRANTES, et al., | Motion to Dismiss; RCFC 12(b)(6); Border Patrol Agent Pay Reform Act, 5 U.S.C. § 5550; Back Pay Act, 5 U.S.C. § 5596; Anti-Deficiency Act (ADA), 31 U.S.C. §§ 1341-42; Government Employees Fair Treatment Act of 2019 (GEFTA); Pub. L. No. 116-1, 133 Stat. 3 (2019). |
| Plaintiffs, |
| v. |
| THE UNITED STATES, |
| Defendant. |

Gary E. Mason, Washington, DC, for plaintiff.  Danielle L. Perry, Alan Lescht, Jack Jarrett, Neil Landeen, Gregory F. Coleman, Lisa A. White, Mark E. Silvey, of counsel.

Erin K. Murdock-Park, Trial Attorney, with whom were Joseph H. Hunt, Assistant Attorney General, Robert E. Kirschman, Jr., Director, Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Ann C. Motto, of counsel.

## OPINION AND ORDER

CAMPBELL-SMITH, Judge.

Plaintiffs in this putative collective action allege that the government violated the Border Patrol Agent Pay Reform Act (BPAPRA), 5 U.S.C. § 5550, by failing to timely pay their earned overtime and regular wages during the partial government shutdown and lapse of appropriations that began on December 22, 2018.  See ECF No. 1 at 35-37 (complaint).[1]  Plaintiffs assert claims against defendant pursuant to the BPAPRA and the

---

[1]    In the second and third counts of plaintiffs' complaint, they allege violations of the Fifth and Thirteenth Amendments to the United States Constitution.  See ECF No. 1 at 42-43. Plaintiffs have voluntarily dismissed those two counts, see ECF No. 31 (order granting motion for voluntary dismissal), and now proceed only on the first count of the complaint, alleging a violation of the Border Patrol Agents Pay Reform Act (BPAPRA), 5 U.S.C. § 5550, see ECF No. 1 at 40-41.

Back Pay Act, 5 U.S.C. § 5596.  See id. at 40-41.  On May 17, 2019, defendant moved to dismiss the complaint for failure to state a claim on which relief may be granted, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), on the basis that the Anti-Deficiency Act (ADA), 31 U.S.C. §§ 1341-42, prohibited the government from paying employees.[2]  See ECF No. 23.

In analyzing defendant's motion, the court has considered:  (1) plaintiffs' complaint, ECF No. 1; (2) defendant's motion to dismiss, ECF No. 23; (3) plaintiffs' response to defendant's motion, ECF No. 24; (4) defendant's reply in support of its motion, ECF No. 30; (5) defendant's first supplemental brief in support of its motion, ECF No. 33; (6) plaintiffs' response to defendant's first supplemental brief, ECF No. 34; (7) defendant's second supplemental brief in support of its motion, ECF No. 43; (8) plaintiffs' response to defendant's second supplemental brief, ECF No. 46; (9) defendant's third supplemental brief in support of its motion, ECF No. 52; and (10) plaintiffs' response to defendant's third supplemental brief, ECF No. 53.  The motion is now fully briefed and ripe for ruling.  The court has considered all of the arguments presented by the parties, and addresses the issues that are pertinent to the court's ruling in this opinion.  For the following reasons, defendant's motion is **DENIED**.

I.      Background

At 12:01 a.m. on December 22, 2018, the federal government partially shut down due to a lack of appropriations.  See ECF No. 1 at 35.  The named plaintiffs in this case were, at the time of the shutdown, employees of the "Customs and Border Protection, a subdivision of the Department of Homeland Security."  Id. at 34.  "Plaintiffs were required to report to work and perform their normal duties, but they were not timely compensated for certain work performed  . . . after midnight on Saturday, December 22, 2018."  Id. at 35.  Plaintiffs further allege that, pursuant to the BPAPRA, "[d]efendant is obligated to pay [p]laintiffs their assigned border patrol rate of pay and to pay [p]lainitffs overtime pay for work performed in excess of applicable thresholds."  Id. at 36.

"Plaintiffs bring the current suit on behalf of themselves and other employees similarly situated for declaratory judgment, back wages, interest on their back wages, and other associated relief for Defendant's willful and unlawful violations of federal law."  Id. at 34.

---

[2]      Defendant also moved to dismiss the second and third counts of the complaint for lack of jurisdiction, but because plaintiffs voluntarily dismissed those claims, see ECF No. 31, defendant subsequently abandoned that portion of its motion.  See ECF No. 30 at 7 n.2 (defendant's reply in support of its motion to dismiss).

II.     Legal Standards

When considering a motion to dismiss brought under RCFC 12(b)(6), the court "must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of the plaintiff." Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

III.    Analysis

A.      Relevant Statutes

This case fundamentally concerns the intersection of three statutes, the ADA, the BPAPRA, and the Back Pay Act. The ADA states that "an officer or employee" of the federal government "may not . . . make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation." 31 U.S.C. § 1341(a)(1)(A). In addition, the ADA dictates that "[a]n officer or employee of the United States Government or of the District of Columbia government may not accept voluntary services for either government or employ personal services exceeding that authorized by law except for emergencies involving the safety of human life or the protection of property." 31 U.S.C. § 1342. In 2019, Congress amended the ADA, adding, in relevant part, the following:

> [E]ach excepted employee who is required to perform work during a covered lapse in appropriations[3] shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates, and subject to the enactment of appropriations Acts ending the lapse.

31 U.S.C. § 1341(c)(2) (footnote added). The amendment is commonly referred to as the Government Employees Fair Treatment Act of 2019 (GEFTA), Pub. L. No. 116-1, 133 Stat. 3 (2019). The knowing or willful violation of the ADA is punishable by a fine of "not more than $5,000" or imprisonment "for not more than 2 years, or both." 31 U.S.C.

---

3       The statute defines "covered lapse in appropriations" to mean "any lapse in appropriations that begins on or after December 22, 2018." 31 U.S.C. § 1341(c)(1)(A).

§ 1350.  And federal employees who violate the ADA "shall be subject to appropriate administrative discipline including, when circumstances warrant, suspension from duty without pay or removal from office."  31 U.S.C. § 1349(a).

Defendant separately has obligations to its employees pursuant to the Back Pay Act and the BPAPRA.  The Back Pay Act provides as follows:

> An employee of an agency who . . . is found by appropriate authority under applicable law . . . to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—
>
> (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—
>
> (i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period.

5 U.S.C. § 5596(b)(1).  The employee is also entitled to recover interest on their back pay, compounded daily.  See 5 U.S.C. §§ 5596(b)(2)(A)-(B).

Here, plaintiffs allege that the unjustified or unwarranted personnel action was defendant's failure to pay their wages under the BPAPRA.  See ECF No. 1 at 40-41.  The BPAPRA governs compensation for border patrol agents.  See 5 U.S.C. § 5550.  The statute outlines three "levels" of pay, and requires that each border patrol agent either elect or be assigned a level annually.  See 5 U.S.C. § 5550(b)(1).  The statute further provides that each "border patrol agent shall receive pay" that corresponds with his or her assigned level.  5 U.S.C. §§ 5550(b)(2)(B), (b)(3)(B); see also 5 U.S.C. § 5550(b)(4)(A).  And each "border patrol agent shall receive compensatory time off or pay at the overtime hourly rate of pay for hours of work in excess of" the regular number of hours set for each level.  5 U.S.C. § 5550(b)(2)(D), (b)(3)(D), (b)(4)(B).

The text of the BPAPRA does not specify a date on which wages must be paid, but "[t]his court has long adhered to the view that a suit for compensation due and payable periodically is, by its very nature, a 'continuing claim' which involves multiple causes of action, each arising at the time the Government fails to make the payment alleged to be due."  Burich v. United States, 366 F.2d 984, 986 (Ct. Cl. 1966); see also Jones v. United States, 113 Fed. Cl. 39, 41 (2013) (stating that "plaintiffs' claims for Sunday premium pay accrued each time payment was due"); Bishop v. United States, 77 Fed. Cl. 470, 481

4

(2007) (holding that plaintiff's claim for overtime pay under the Back Pay Act "began to accrue . . . when he allegedly worked uncompensated overtime"); Corrigan v. United States, 70 Fed. Cl. 665, 671 (2006) (holding that a claim for back pay accrues "each time . . . compensation [mandated by a statute] was excluded from [an employee's] paycheck"); Friedman v. United States, 310 F.2d 381, 385 (Ct. Cl. 1962) (stating that "where the payments are to be made periodically, each successive failure to make proper payment gives rise to a new claim upon which suit can be brought").

    B.    The Court's Reasoning in Martin Is Instructive Here

    In its motion to dismiss, defendant first argues that plaintiffs' complaint should be dismissed for failure to state a claim because the agencies for which appropriations lapsed on December 22, 2018, were prohibited by the ADA from paying their employees. See ECF No. 23 at 19-21.  This mandate, in defendant's view, means that defendant cannot be held liable for violating its obligations under the Back Pay Act and the BPAPRA.  See id.  Defendant argues:

>    When Congress criminalized payments during an appropriations lapse, Congress plainly precluded payments on the schedule plaintiffs assert is required by the BPAPRA and the [Back Pay Act].  Federal officials who comply with that criminal prohibition do not violate the BPAPRA or the [Back Pay Act], and Congress did not create a scheme under which compliance with the [ADA] would result in additional compensation as damages to federal employees.

Id. at 19-20.

    The parties have not presented, nor has the court found, any case in which a court has previously ruled on intersection of the ADA, the Back Pay Act, and the BPAPRA. This court, however, has ruled on the intersection between the ADA and a different federal pay statute—the Fair Labor Standards Act, 29 U.S.C. § 201-219 (FLSA)—in the context of a lapse in appropriations.  See Martin v. United States, 130 Fed. Cl. 578 (2017).  In Martin, plaintiffs were "current or former government employees who allege[d] that they were not timely compensated for work performed during the shutdown, in violation of the [FLSA]."  Id. at 580 (citing 29 U.S.C. § 201 et seq.).  The plaintiffs in Martin alleged the right to liquidated damages with regard to both the government's failure to timely pay minimum wages and its failure to pay overtime wages.  See id.  In its motion for summary judgment, the government argued that "it should avoid liability under the FLSA for its failure to [pay plaintiffs on their regularly scheduled pay days during the shutdown] because it was barred from making such payments pursuant to the ADA."  See id. at 582.  The government summarized its argument in Martin as follows:

The FLSA and the Anti-Deficiency Act appear to impose two conflicting obligations upon Federal agencies:  the FLSA mandates that the agencies "shall pay to each of [its] employees" a minimum wage, 29 U.S.C. § 206(a) (emphasis added), which has been interpreted by the courts to include a requirement that the minimum wage be paid on the employees' next regularly scheduled pay day, see Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707 n.20 [65 S. Ct. 895, 89 L. Ed. 1296] (1945); Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993), and the [ADA] mandates that "[a]n officer or employee of the United States Government . . . may not  . . . make or authorize an expenditure . . . exceeding an amount available in an appropriation or fund for the expenditure . . . ." 31 U.S.C. § 1341(A)(1)(A) (emphasis added). Thus, when Federal agencies are faced with a lapse in appropriations and cannot pay excepted employees on their next regularly scheduled payday, the question arises of which statutory mandate controls.

Id. at 582-83 (quoting defendant's motion for summary judgment) (alterations in original).

After reviewing applicable precedent and persuasive authority, the court concluded that "the issue is more complex than simply a choice between whether the FLSA or the ADA controls." Id. at 583.  In the court's view:

the appropriate way to reconcile the [ADA and the FLSA] is not to cancel defendant's obligation to pay its employees in accordance with the manner in which the FLSA is commonly applied. . . .  As such, the court will proceed to analyze this case under the construct of the FLSA, and evaluate the existence and operation of the ADA as part of determining whether defendant met the statutory requirements to avoid liability for liquidated damages.

Id. at 584.  The court noted that plaintiffs' claims survived a motion to dismiss because they had "alleged that defendant had failed to pay wages" on plaintiffs' "next regularly scheduled payday." Id. at 584.  On summary judgment, the court concluded that plaintiffs had proven this claim.  See id.

In its motion to dismiss, defendant does not dispute plaintiffs' allegations that they were required to work during the shutdown, or that the plaintiffs were not paid during that time.  See ECF No. 23.  Defendant characterizes the issues now before the court as:

whether plaintiffs' back pay claims are moot because they have now been fully paid their wages for their work performed during the lapse in appropriations, and whether plaintiffs have stated a claim under the [BPAPRA] or the Back Pay Act for back pay, interest, attorney fees, and costs, because the federal government did not pay plaintiffs on their regularly

6

scheduled paydays during the lapse and notwithstanding the provisions of the [ADA].

Id. at 11.  In arguing its position, defendant acknowledges the court's decision in Martin, but both notes that it "respectfully disagree[s] with that holding," and argues that the holding "cannot be extended to apply to non-FLSA statutes."  Id. at 20.  Notwithstanding defendant's disagreement, the court believes that the framework it set out in Martin is appropriate and instructive here.[4]

This case does not involve FLSA claims; in fact, plaintiffs are expressly excluded from the FLSA.  See 29 U.S.C. § 213(a)(18) (stating that the FLSA does not apply to "any employee who is a border patrol agent, as defined in section 5550(a) of Title 5").  But defendant's obligations under the BPAPRA and the Back Pay Act, are analytically similar to its obligations under the FLSA.  Like the BPAPRA and the Back Pay Act, the FLSA sets out defendant's obligations to pay regular and overtime wages to its employees, and provides a means for recovering damages in the event the pay provisions are violated.  See 29 U.S.C. §§ 206, 207, 216.  And although like the BPAPRA the text of the FLSA does not specify the date on which wages must be paid, courts have held that employers are required to pay these wages on the employee's next regularly scheduled payday.  See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945); Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993).  As such, in the court's view, the central holding in Martin—that defendant's obligations under the ADA do not abrogate its obligations under the FLSA—logically applies with the same force here.  See Martin, 130 Fed. Cl. at 584.

---

[4]    Defendant also argues that its obligations under the BPAPRA and the Back Pay Act are limited by the ADA because "a congressional payment instruction to an agency must be read in light of the [ADA]."  ECF No. 23 at 26.  In support of this argument, defendant cites to Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States, 48 F.3d 1166, 1171 (Fed. Cir. 1995).  See id.  In Highland-Falls, plaintiffs challenged the Department of Education's (DOE) method for allocating funds under the Impact Aid Act.  Highland-Falls, 48 F.3d at 1171.  The United States Court of Appeals for the Federal Circuit found, however, that the DOE's "approach was consistent with statutory requirements."  Id.  The case did not address BPAPRA or Back Pay Act claims, and found that the DOE's approach "harmonized the requirements of the Impact Aid Act and the [ADA]."  See id.  In the court's view, the Federal Circuit's decision in Highland-Falls does not alter the analysis in this case.  The United States District Court for the District of Columbia's combined decision in National Treasury Employees Union v. Trump, Case No. 19-cv-50 and Hardy v. Trump, Case No. 19-cv-51, 444 F. Supp. 3d 108 (2020), discussed by defendant in one of its supplemental filings, see ECF No. 43, is likewise unhelpful.  Although it involved facts that arose from the same 2018 lapse in appropriations, the decision focuses almost exclusively on an analysis of whether plaintiffs' claims were moot, rather than on the operation of the ADA.

Accordingly, as it did with regard to the FLSA claims in <u>Martin</u>, the court will analyze defendant's obligations under the BPAPRA and the Back Pay Act along with its obligations under the ADA.[5]  <u>See</u> <u>Martin</u>, 130 Fed. Cl. at 584 (stating that "the court will proceed to analyze this case under the construct of the FLSA, and evaluate the existence and operation of the ADA as part of determining whether defendant met the statutory requirements to avoid liability for liquidated damages").

C.     Waiver of Sovereign Immunity

Before analyzing the sufficiency of plaintiffs' allegations, the court must address defendant's contention that plaintiffs' claims are barred by the doctrine of sovereign immunity.  In its motion to dismiss, defendant correctly notes that "'[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied.'"  ECF No. 23 at 28 (quoting <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996)).  And that waiver "'will be strictly construed, in terms of its scope, in favor of the sovereign.'"  <u>Id.</u> (quoting <u>Lane</u>, 518 U.S. at 192).  Defendant concedes that "the BPAPRA is money-mandating for border patrol agents' pay," giving this court jurisdiction over claims made under the statute, but argues that the claims made by plaintiffs in this case for the delayed payment of wages fall outside the scope of the waiver of sovereign immunity.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Adde v. United States</u>, 81 Fed. Cl. 415, 417 (2008) (holding that this court can hear claims made under the Back Pay Act only when a "plaintiff [also alleges] another source of law which requires a non-discretionary, virtually automatic payment which has not occurred").

Defendant argues that the Back Pay Act and the BPAPRA "do not require that employees be paid on their regularly scheduled pay date or make damages available when compensation is not received on a pay date."  ECF No. 23 at 29.  As a result, defendant contends, the scope of the waiver of sovereign immunity does not extend to the category of claims alleging a violation because wages were not paid as scheduled, such as plaintiffs' claims in this case.  <u>See</u> <u>id.</u> at 29-30.  According to defendant, the GEFTA

---

[5]     The parties both claim that the Supreme Court of the United States' decision in <u>Maine Community Health</u>, 140 S. Ct. 1308, supports their position in this case.  <u>See</u> ECF No. 52, ECF No. 53.  <u>Maine Community Health</u> does not address the FLSA, and only includes a limited discussion of the ADA.  <u>See</u> <u>Maine Cmty. Health</u>, 140 S. Ct. at 1321-22.  Accordingly, the decision does not dictate the outcome here.  To the extent that the case informs the present discussion, however, it tends to support plaintiffs.  In the opinion, the Supreme Court held that "the [ADA] confirms that Congress can create obligations without contemporaneous funding sources," and concludes that "the plain terms of the [statute at issue] created an obligation neither contingent on nor limited by the availability of appropriations or other funds."  <u>Id.</u> at 1322, 1323.  Applied here, this conclusion suggests that the defendant can incur an obligation to pay plaintiffs pursuant to the normal operation of the BPAPRA and the Back Pay Act even when funding is not available.

confirms its long-standing belief that the government's payment obligations under the pay statutes are abrogated by a lack of appropriations:

> The [GEFTA] provides that "each excepted employee who is required to perform work during a  . . . lapse in appropriations shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates." Pub. L. No. 116-1, 133 Stat. 3.  Congress has thus spoken directly to the question of when compensation should be paid.  There can be no basis for inferring that compensation made in accordance with that explicit directive subjects the United States to damages.

Id. at 30.

> Defendant also asserts, without citation to any authority, as follows:

> Given that the [ADA] not only prohibits federal agencies from paying excepted employees on their regularly scheduled paydays during a lapse in appropriations, and that it addresses specifically when and at what rate wages are to be paid following a lapse in appropriations, the government's waiver of sovereign immunity under the BPAPRA and the [Back Pay Act] must be strictly construed against liability for the delayed (but always forthcoming) payment of wages because of a lapse in appropriations.

ECF No. 30 at 16.

The court disagrees.  The claims brought by plaintiffs in this case are straightforward claims under the BPAPRA and the Back Pay Act.  See ECF No. 1 at 40-41; ECF No. 24 at 9-10.  And although the statutory text does not specify when such claims arise, the long history of this court's decisions establishes that pay claims arise each time defendant fails to pay wages owed.  See, e.g., Jones, 113 Fed. Cl. at 41; Bishop v. United States, 77 Fed. Cl. at 481; Burich, 366 F.2d at 986.  Contrary to defendant's suggestion, the court is unpersuaded that this judicially-imposed timing requirement transforms ordinary pay claims into something analytically distinct, and beyond the scope of the statute's waiver of sovereign immunity.

Accordingly, the court finds that defendant has waived sovereign immunity as to plaintiffs' claims, and the court will review the sufficiency of plaintiffs' allegations as it would in any other such case.

D.     Plaintiffs State a Claim for Back Pay

To state a claim for relief pursuant to the Back Pay Act, plaintiffs "must show that (1) this Court is the 'appropriate authority' to determine whether (2) he was subject to an 'unjustified or unwarranted personnel action' that (3) 'resulted in the withdrawal or reduction of all or part of [his] pay, allowances, or differentials.'"  Dustin v. United States, 113 Fed. Cl. 366, 370 (2013) (quoting 5 U.S.C. § 5596(b)(1), and citing Collier v. United States, 379 F.3d 1330, 1332-33 (Fed. Cir. 2004)).

"Whether this Court is the 'appropriate authority' to make an award under the Back Pay Act depends on whether the personnel action at issue is one over which the Civil Service Reform Act has deprived this Court of jurisdiction."  Id. (citing United States v. Fausto, 484 U.S. 439, 454 (1988); Salinas v. United States, 323 F.3d 1047, 1049 (Fed. Cir. 2003); Sacco v. United States, 63 Fed. Cl. 424, 428-29 (2004)).  A claim for late payment of wages due pursuant to the BPAPRA is not among the personnel actions within the purview of the Civil Service Reform Act.  See 5 U.S.C. § 7512.  Defendant does not dispute that this court is an appropriate authority for purposes of this case within the meaning of the Back Pay Act.  See ECF No. 23; ECF No. 30.

Here, plaintiffs allege that the unjustified or unwarranted personnel action that resulted in a withdrawal or reduction in pay was defendant's failure to timely pay their wages as required by the BPAPRA.  See ECF No. 1 at 40-41.  In their complaint, plaintiffs allege that they "were required to report to work and perform their normal duties, but they were not timely compensated for certain work performed . . . after midnight on Saturday, December 22, 2018" in violation of the BPAPRA.  Id. at 35, 36.

According to defendant, these allegations do not amount to an unjustified or unwarranted personnel action for two reasons.  See ECF No. 23 at 31.  "First, the lapse in appropriations was not a personnel action."  Id. at 32.  This argument misconstrues plaintiffs' allegations.  Plaintiffs allege that the relevant personnel action was defendant's failure to pay their statutorily mandated wages, not Congress's failure to appropriate funds to the agency.  See ECF No. 1 at 40-41.

And second, defendant argues that its failure to pay plaintiffs' wages was not unjustified or unwarranted because of the limitations imposed by the ADA.  See ECF No. 23 at 32-33.  Defendant acknowledges that courts have held "that an unjustified or unwarranted personnel action can encompass withholding of pay . . . or outright failure to pay."  Id. at 31 (citing Romero v. United States, 38 F.3d 1204, 1210 (Fed. Cir. 1994), and Adde v. United States, 98 Fed. Cl. 517, 522 (2011)).  In this case, however, it contends that "[p]laintiffs cannot demonstrate that, in the extraordinary circumstances of a lapse in appropriations, the government's actions were 'unjustified and unwarranted.'"  Id. at 33.

10

Whether defendant's failure to pay plaintiffs during the shutdown was unjustified or unwarranted under the particular circumstances of this case, however, is a novel question seeming to involve mixed issues of fact and law.  Defendant, in effect, asks the court to hold that the provisions of the ADA create a per se rule that a failure to pay employees during a government shutdown cannot be unjustified or unwarranted.  The court is not prepared, based on the argument before it, to reach such a conclusion prior to allowing for any factual development that could inform its analysis.[6]  Accordingly, the court will not make a determination at this stage of the litigation as to whether defendant's actions were unjustified or unwarranted, but finds that plaintiffs have met the relatively low bar of alleging facts that could plausibly support such a finding.  See Iqbal, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

Finally, defendant argues that plaintiffs "cannot demonstrate that they meet the third element required to establish a [Back Pay Act] violation, that the 'unjustified or unwarranted personnel action . . . resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee.'"  ECF No. 23 at 33 (quoting Collier, 379 F.3d at 1333).  According to defendant, "[b]ecause plaintiffs' pay was delayed, and not permanently reduced or withdrawn, plaintiffs have failed to state a cognizable [Back Pay Act] claim."  Id. at 34.  In making this argument, defendant cites to a number of cases, none of which hold that delayed payment is insufficient to support recovery under the Back Pay Act.  See id. at 33-35.  In fact, this court has affirmatively held—in a case cited by defendant elsewhere in its brief—that delayed payment of wages owed can constitute a violation of the Back Pay Act.  See Adde, 98 Fed. Cl. at 522 (rejecting defendant's argument that plaintiff had not shown an unjustified or unwarranted personnel action under the Back Pay Act because plaintiff "was merely the victim of delayed payment"); see also ECF No. 23 at 31-32.

The court finds that, presuming the facts as alleged in the complaint to be true and drawing all reasonable inferences in their favor, plaintiffs have stated a claim for relief under the Back Pay Act and the BPAPRA.[7]  See Cary, 552 F.3d at 1376 (citing Gould,

---

[6]      For example, the court could envision a situation in which an agency has not exhausted its previously appropriated funding at the time of a government shutdown, but fails to pay employees deemed excepted under the ADA because new funds had not been appropriated.  Under such circumstances, the hypothetical employees may be able to show that the agency's decision was not warranted or justified.  Accordingly, the court will proceed with caution before adopting a per se rule against recovery under the Back Pay Act for wages earned but not timely paid during a government shutdown.

[7]      According to defendant, the fact that it paid plaintiffs' wages after the shutdown ended moots their claims. See ECF No. 23 at 22-24.  Defendant's argument appears to be premised on its position that plaintiffs' claim for pay did not accrue during the shutdown, by operation of the ADA.  See id.  As the court has previously explained, however, it disagrees.  Defendant does not

935 F.2d at 1274).  The court will determine whether plaintiff ultimately proves the elements of its claims at the appropriate procedural opportunity.

IV.    Conclusion

Accordingly, for the foregoing reasons:

(1)    Defendant's motion to dismiss, ECF No. 23, is **DENIED**;

(2)    On or before **February 12, 2021**, defendant is directed to **FILE** an **answer** or otherwise respond to plaintiffs' complaint; and

(3)    On or before **February 12, 2021**, the parties are directed to **CONFER** and **FILE** a **joint status report** informing the court of their positions on the consolidation of this case with any other matters before the court.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge

---

claim to have paid any interest allowed under the statute.  See 5 U.S.C. § 5596(b)(2)(A) (stating that awards for back pay "shall be payable with interest").  Thus, to the extent such liability can be established and remains outstanding, plaintiffs' claims remain viable.